Daniel Cooper (Bar No. 153576)
Layne Friedrich (Bar No. 195431)
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: daniel@lawyersforcleanwater.com
       layne@lawyersforcleanwater.com

Lynne Saxton (Bar No. 226210)
ENVIRONMENTAL LAW FOUNDATION
1736 Franklin St 9th Fl
Oakland, CA 94612
Telephone: (510) 208-4555
Facsimile: (510) 208-4562
Email: lsaxton@envirolaw.org

Attorneys for Plaintiffs
Allen and Nancy Edwards and Environmental Law Foundation

Donald B. Mooney (Bar No. 153721)
LAW OFFICE OF DONALD B. MOONEY
129 C Street, Suite 2
Davis, CA  95616
Telephone:  (530) 758-2377
Facsimile:   (530) 758-7169
Email: dbmooney@dcn.org

Attorney for Plaintiffs
Allen and Nancy Edwards

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN EDWARDS, an individual; NANCY EDWARDS, an individual; and ENVIRONMENTAL LAW FOUNDATION, a non-profit organization,<br><br>        Plaintiffs,<br><br>     v.<br><br>THE CITY OF COLFAX, a municipal corporation,<br><br>        Defendant. | Civil Case No.:  2:07-CV-02153-GEB-EFB<br><br>**ORDER RE: COMPLIANCE WITH SETTLEMENT AGREEMENT** |

WHEREAS Defendant City of Colfax ("City") is required to comply with the Settlement Agreement entered by this Court on January 23, 2009 ("Settlement Agreement");

WHEREAS Plaintiffs Allen Edwards, Nancy Edwards, and Environmental Law Foundation ("Plaintiffs") have moved for contempt, and to enforce the terms of the Settlement Agreement in this action;

WHEREAS in the interest of avoiding the costs of further litigation, and in resolving any Settlement Agreement compliance issues, Plaintiffs and the City (collectively, the "Parties") have agreed to the following activities and schedules for achieving compliance, which will be overseen by the District Court;

WHEREAS, on June 16 through July 5, 2009, and August 29 through at least September 17, 2009, the City re-routed flows from the wastewater treatment plant ("WWTP") into Pond Nos. 2 and 3, thereby eliminating effluent flows to Smuthers Ravine Creek;

WHEREAS, the City's Self Monitoring Reports document the discharge of approximately 66 million gallons of wastewater to Pond No. 3 between 1 February 2009 and 30 June 2010;

THEREFORE; the Parties agree to, and the Court orders, the following:

**Stipulated Penalties**

1. As required by the Settlement Agreement, and within fifteen (15) days of the entry of this Order the City shall pay the Edwards $10,000 in stipulated penalties for the spill from the seepage pump-back system at Pond No. 3 that occurred between September 29, 2009 through October 14, 2009 at a reported volume of 11,200 gallons.  Payment shall be via certified check made payable to "Lawyers for Clean Water Attorney Client Trust Account" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery.

2. The District Court will stay its decision on all other stipulated penalties sought by Plaintiffs, pending compliance with this Order.  If the City complies with this Order, the Court's decision on stipulated penalties through the date of this order will be permanently stayed.

**Compliance Activities**

3. The purpose of this Order is to ensure compliance with the Settlement Agreement and NPDES Permit No. CA0079529 ("NPDES Permit").  Disputes regarding the City's compliance with effluent and receiving water limitations contained in the NPDES Permit and required by the Settlement Agreement, except as provided for in paragraphs 5-9 below, shall be addressed via the process set forth in paragraph 25 below.

4. Disputes regarding the City's compliance with its NPDES Permit Monitoring and Reporting Program (Attachment E to the NPDES Permit) as required by the Settlement Agreement, except as provided for in paragraphs 5-9 below, and the monitoring and reporting requirements of the Settlement Agreement, shall be addressed via the process set forth in paragraph 25 below.

**Copper WER Study**

5. The City shall submit a Water Effects Ratio ("WER") study for copper to the California Regional Water Quality Control Board, Central Valley Region, ("RWQCB") no later than March 31, 2012.

6. If, prior to October 31, 2012, the RWQCB approves the WER study, resulting in modification of effluent limitations for copper set forth in the NPDES Permit, with which the City can consistently comply prior to December 31, 2012, the City shall comply with the revised limitations.  If the WER study fails to result in modified effluent limits for copper with which the City can consistently comply, the City shall initiate a source reduction study no later than November 30, 2012, and shall thereafter implement identified source control actions required to ensure consistent compliance with final effluent copper limitations contained in NPDES No. CA0079529 by January 1, 2014.  During this period, and provided the City complies with the actions required by paragraphs 5 and 6 of this Order and the requirements of Cease and Desist Order No. R5-2010-0001, the City shall not be deemed in violation of the Settlement Agreement for exceeding the NPDES Permit's effluent limitations for copper.

**PCHP Sampling**

7. In September, October, and December 2010, and February, April, and June 2011, the City shall have its certified laboratory collect split effluent samples that will be analyzed under both EPA Method 8081A and mass spectrometry for the Persistent Chlorinated Hydrocarbon Pesticides ("PCHP") set forth in NPDES Permit No. CA0079529.  The City shall provide Plaintiffs with the results of all PCHP analyses, including chain of custody, laboratory data, and all Quality Control/Quality Assurance data within five (5) business days of receipt of such data by the City.

8. If the sampling and analysis described in paragraph 7 above determines that any PCHP is detected by both EPA Method 8081A and mass spectrometry, or that any PCHP is quantifiably detected by EPA Method 8081A at or above the Minimum Level or Reporting Level defined in the NPDES Permit, then, within sixty (60) days of that determination, the City shall initiate a pollutant minimization program ("PMP") pursuant to Section IV.C.3.a. of the City's NPDES Permit to determine the source of PCHP and the steps required to eliminate PCHP in the WWTP effluent.  The pollution prevention study shall be completed by December 31, 2012, and the actions identified in the PMP to reduce and/or eliminate PCHP in the effluent shall be implemented.  In this circumstance, the City shall not be required to perform additional analysis under paragraph 7 of this Order using mass spectrometry regarding PCHP.

9. If the conditions set forth in paragraph 8 above are not met, and if, in any of the six analyses conducted pursuant to paragraph 7 above, at least one specific PCHP is detected at a level above the method detection limit but below the Minimum Level or Reporting Level by EPA Method 8081A, and that same PCHP is not detected by mass spectrometry in that sample, the City shall not be required to perform additional analysis under paragraph 7 of this Order using mass spectrometry regarding PCHP, and no further action to address previous PCHP sample results of "detected, not quantified" ("DNQ") via analysis by EPA Method 8081A by the City is necessary under this Order.  Similarly, if all six analyses result in none of the PCHP being detected by EPA Method 8081A or mass spectrometry, the City shall not be required to perform any additional analysis under this Order using mass spectrometry, and no further action to address previous

PCHP sample results of DNQ via analysis by EPA Method 8081A by the City is necessary under this Order. Nothing in this Order shall relieve the City of its responsibility to continue complying with the limit for PCHP contained in the NPDES Permit.

**Infiltration and Inflow ("I&I")**

10. No later than February 14, 2011, the City shall complete the current collection system pipeline repair/rehabilitation/replacement work being conducted by independent contractor McGuire Hester pursuant to the December 22, 2009 contract ("McGuire Hester Contract") with grant funds provided by the American Reinvestment and Recovery Act of 2009 ("ARRA"). The City shall use its best efforts to reallocate monies in the contract from sewer segments found not to require immediate repair through its condition assessment work to segments in need of immediate repair.

11. No later than February 14, 2011, the City shall remove obstructions from all sewer segments rated CI, as that term is defined in paragraph 26 of the Settlement Agreement, in its June 30, 2010 Wastewater Collection Condition Assessment due to obstruction and shall complete condition assessment of those sewer segments.

12. If CI sewer segments remain in the City's condition assessment after the City completes the work described in paragraphs 10 and 11 of this Order, the City will repair, replace, and/or rehabilitate those remaining segments by December 31, 2011. If repair, replacement, or rehabilitation of those segments is technically infeasible on or before December 31, 2011, the City may seek an extension of time from the Court to complete the collection system improvements. The City bears the burden of establishing such technical infeasibility. If the City lacks funding for, or ability to fund, the remaining repair, replacement, or rehabilitation of CI sewer segments, the City will address this issue in the April 15, 2011 monthly report to the Court, and shall document the costs associated with the remaining work.

13. Plaintiffs shall be added to the Interested Parties list for the CEQA process related to any project involving hookups to the City's WWTP.

14. Within ten (10) calendar days of receipt, the City shall notify Plaintiffs of any application for building permits related to the Colfax Pines residential development project.

**Flow Meter**

15. The City has certified that an effluent flow meter has been installed, calibrated, and is in continuous operation at the City's WWTP.

16. The Parties understand that the United States Environmental Protection Agency ("U.S. EPA") and/or its contractor, PG Environmental, plans to conduct a follow-up inspection of the City's WWTP in November or December 2010.  If this inspection is conducted by February 1, 2011, the City shall provide Plaintiffs a copy of the resulting inspection report within ten (10) calendar days of receipt.  If, however, the inspection by U.S. EPA and/or PG Environmental does not occur by February 1, 2011, Plaintiffs shall be entitled to a visual physical inspection of the City's WWTP to confirm the location and function of the effluent flow meter, UV intensity meter, chlorine residual meter, and turbidity meter, and of the pipeline infrastructure at the City's retired interim wastewater treatment facility to confirm the facility's inability to discharge.  Plaintiffs' inspection, if it is to occur, will be conducted by Plaintiffs' expert, Dr. Bruce Bell, to occur as soon as practicable, but no later than May 1, 2011.  Fees or costs related to the inspection shall be paid from the compliance oversight budget set forth in paragraph 33 below.

17. Plaintiffs Allen and Nancy Edwards agree to allow all applicable statute(s) of limitations to expire on the Government Claims Act claims presented to the City and dated March 23, 2010 and July 5, 2010 ("2010 Claims"), and agree that once the statute(s) of limitation expire, all claims set forth in the 2010 Claims are extinguished.

**Format of Continuous Monitoring Data**

18. Beginning with the August 2010 Self-Monitoring Report provided to Plaintiffs pursuant to paragraph 74 of the Settlement Agreement, data from continuous flow, total residual chlorine, Ultra Violet intensity, and turbidity meters shall be provided in tabular format at no more than 15 minute intervals.

**Pond No. 3**

19. The City shall install a liner in Pond No. 3 to line Pond No. 3 in its entirety.

20. The City shall have adequate financing in place and shall advertise for bids for a contract for construction of the Pond No. 3 liner and all auxiliary work no later than March 31, 2012.  At the time the City advertises for bids, the City shall concurrently provide Plaintiffs a copy of the Request for Proposal that contains the preliminary design for the Pond No. 3 liner.

21. The City shall award a contract for construction of the Pond No. 3 liner and all auxiliary work no later than May 31, 2012 and initiate construction no later than July 1, 2012.

22. The City shall complete construction of the Pond No. 3 liner no later than November 30, 2012, unless rainfall during the preceding twenty-four (24) months meets or exceeds the rainfall expected in return periods shown in the table below:

| Precipitation (inches) 2010-11/2011-12 | Return Period 2010-11/2011-12 | Dewater Pond No. 3 with ADWF of 0.465 mgd |
|---|---|---|
| 59.3/74.9 | 5yr/25yr | August 2011 |
| 66.6/59.3 | 10 yr/5 yr | September 2011 |
| 74.9/59.3 | 25 yr/5 yr | July 2012 |
| 74.9/66.6 | 25 yr/10 yr | October 2012 |
| 80.5/59.3 | 50 yr/5 yr | August 2012 |
| 86.2/59.3 | 100 yr/5 yr | October 2012 |

23. In the event that rainfall meeting or exceeding the return periods in paragraph 22 above occurs, as demonstrated by the City, the City shall complete the Pond No. 3 liner by November 30, 2013. Should additional excessive rainfall occur in the 2012/2013 wet season that precludes ability to comply with the November 30, 2013 deadline, the Parties shall meet and confer to attempt to agree upon a final completion date for lining the required volume of Pond No. 3.

**Funding of Pond No. 3 Liner**

24. To ensure timely funding of lining of Pond No. 3, the City shall meet the following interim and final milestones:

    A. The City shall immediately take all steps to apply for a State Revolving Fund ("SRF") loan.

    B. If, by November 30, 2011, the City does not have a commitment of sufficient funds to complete the Pond No. 3 liner project on or before November 30, 2012, the City shall pursue funding via a municipal bond.

        i. The City shall complete and submit all funding Requests for Proposals on or before December 1, 2011.

        ii. The City shall secure a strong indication of interest from either a bank or an underwriter by January 15, 2012 and provide confirmation to Plaintiffs; and

        iii. The City shall secure municipal bond funding by March 1, 2012.

**Quarterly Status Conferences**

25. Beginning on November 10, 2010, the Parties shall participate in quarterly status conferences with the Court (Magistrate Judge Brennan presiding) to discuss the City's ongoing ability to comply with the requirements of this Order. These conferences shall be held at 10:00 a.m. on November 10, 2010, February 16, 2011, May 11, 2011, August 17, 2011, November 16, 2011, February 15, 2012, May 16, 2012, August 15, 2012, and November 14, 2012, and continuing quarterly until the activities required by this Order are completed. The status conferences shall be held telephonically, unless either Party or the Court requests an in-person conference. To arrange telephonic appearance, the Parties shall contact Courtroom Deputy Nic Cannarozzi at (916) 930-4172, at least forty-eight hours prior to the status conference. A joint status report shall be filed by the Parties five (5) court days prior to each quarterly status conference.

26. Following completion of the Pond No. 3 liner, the Parties may stipulate to, or the City may request the Court for, a reduction or elimination of the quarterly status conferences.

**Reservation of Authority to Issue Injunction**

27. The Court specifically reserves the authority to issue an injunction or other appropriate relief to ensure the City's compliance with the federal Clean Water Act, NPDES Permit No. CA0079529, the Settlement Agreement, and this Order. The Parties agree and stipulate that the Court has the

jurisdiction to issue injunctive or other relief necessary to achieve compliance with this Order, the Settlement Agreement, and the NPDES Permit No. CA0079529.  The City specifically agrees it shall not challenge the Court's jurisdiction or authority to issue injunctive relief necessary to achieve compliance with this Order as it pertains to the Settlement Agreement and the NPDES Permit.

**Monthly Reporting**

28. Beginning on November 10, 2010, and on or before the 10th of each month thereafter until the activities required by this Order are completed, the City shall file a status report with the Court and shall serve a copy of the status report on Plaintiffs.  The reports shall include progress towards compliance with each of the elements of this Order, and any events that have occurred since the prior month's status report that may affect compliance with the Order's requirements. The reports shall include electronically-filed, certified copies of the City's Self Monitoring Reports ("SMRs") required by the NPDES Permit, and shall include the following specific reporting:

   a. Certification that the effluent flow meter is operational, and that the reported flow rate is true and correct.
   b. Certification that all reports and other documents provided to Plaintiffs pursuant to the Settlement Agreement and this Order are complete and accurate.
   c. Certification that the City has submitted a WER study to the RWQCB by March 31, 2012.
   d. Certification that by October 31, 2012, the RWQCB has approved the WER and modified the City's effluent limits for copper such that the City can consistently comply with the modified effluent limits, or that the City has initiated by November 30, 2012 a source reduction study in accordance with this Order.
   e. The results of PCHP sampling and analysis prescribed by this Order and whether based thereon, the City must, and has, prepared a PMP and timely initiated and completed activities identified therein.

f.  Certification that the collection system sewer pipeline repair/replacement/rehabilitation work being performed pursuant to the McGuire Hester Contract is completed by February 14, 2011.

g.  Certification that by February 14, 2011, the obstructions from CI sewer segments have been removed sufficient to allow a Closed Circuit Television ("CCTV") camera to pass through, and that the condition assessment, including CCTV, of those sewer segments is complete.

h.  Certification by December 31, 2011, that all sewer segments still rated CI on December 31, 2010 have been repaired/rehabilitated or replaced, unless an extension is granted by this Court.

i.  Certification that construction of the Pond No. 3 liner was completed by November 30, 2012, unless rainfall precludes such installation, in which case, the City shall include details regarding any proposed revised schedule for completing the Pond No. 3 liner consistent with paragraphs 22 and 23 above.

j.  Assuming no modifications to the November 30, 2012 completion date for the Pond No. 3 liner, certification that financing was secured for the Pond No. 3 liner by March 31, 2012, that advertisement for bids were complete by March 31, 2012, that a contract for construction of the Pond No. 3 liner was awarded by May 31, 2012, and that construction activity for the Pond No. 3 liner commenced July 1, 2012.  If modifications to the completion date occur, as specified in paragraphs 22-23 above, monthly reports will include the revised schedule and information on financing, bid advertisement and contract award, as appropriate.

k.  Until completion of the Pond No. 3 liner, quarterly reports describing applications submitted to the City for building permits and/or other applications for new or additional sewer service.

l.  Any additional reporting that may be required by specific paragraphs of this Order.

29. Upon completion of the Pond No. 3 liner, the City can request, or the Parties can stipulate to, reduction or elimination of the categories and/or frequency of reporting.

30. Certifications in the reports shall be under the penalty of perjury and shall be made by: a grade II or higher licensed WWTP operator for all operational and permit compliance reporting; and a professional engineer licensed in California for all reporting related to engineering and collection system improvements; and a Certified Independent Public Finance Advisor for all financial reporting.

31. For purposes of this Order, financial inability to pay shall not be considered Force Majeure.

32. Plaintiffs' request for fees and costs incurred to date is deemed submitted and will be addressed in a separate order.

33. To compensate Plaintiffs for time to be spent by legal staff and/or technical consultants related to overseeing and enforcing the City's compliance with this Order, and participating in joint reports and quarterly status conferences, the City shall reimburse Plaintiffs' counsel a total sum not to exceed Forty Thousand Dollars ($40,000) for the life of this Order as follows: $3,000 on November 1, 2010, $3,000 on February 1, 2011, $3,000 on May 1, 2011, and $3,000 on August 1, 2011 (all for work September 2010 – August 2011), $10,000 on September 1, 2011 (for September 2011 – August 2012), $10,000 on September 1, 2012 (for September 2012 – August 2013), and $8,000 on September 1, 2013 (for September 2013 through conclusion of activities prescribed by this Order detailed below). Each payment shall be made via certified check payable to "Lawyers for Clean Water Attorney Client Trust Account" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery. Should all actions required by this Order in paragraphs 5-12, 16, and 19-24 be complete prior to the timeframes applicable to the payment deadlines specified above, the City shall not be obligated to pay the remaining sums set forth in this paragraph (*e.g.*, if all specified activities are complete prior to September 2013, no payment is due September 1, 2013). Should significant non-compliance with this Order occur, or a significant change in circumstances related to the Pond No. 3 liner occur, Plaintiffs may move this Court to award fees and costs above the cap specified.

The Parties hereby enter into this Agreement.

Date: _____                       signature on original
                                            _____
                                            Allen Edwards
                                            Edwards Family Farm


Date: _____                       signature on original
                                            _____
                                            Nancy Edwards
                                            Edwards Family Farm


Date: _____                       signature on original
                                            _____
                                            Daniel Cooper
                                            Attorney for Environmental Law Foundation


Date: _____                       signature on original
                                            _____
                                            Bruce Kranz
                                            City of Colfax, City Manager


APPROVED AS TO FORM:


Dated: _____, 2010                  Respectfully Submitted,

                                            LAWYERS FOR CLEAN WATER, INC.

                                            signature on original
                                            _____
                                            Daniel Cooper
                                            Layne Friedrich
                                            Attorneys for Allen Edwards, Nancy Edwards,
                                            and Environmental Law Foundation


Dated: _____, 2010                  LAW OFFICES OF DONALD B. MOONEY


                                            signature on original
                                            _____
                                            Donald B. Mooney
                                            Attorneys for Allen Edwards and Nancy Edwards

1  Dated: _____, 2010                DOWNEY BRAND LLP

                                                 signature on original
                                              _____
                                              Nicole Granquist
                                              Attorneys for City of Colfax

       IT IS SO ORDERED.

Dated:  November 2, 2010.

                                              _____
                                              EDMUND F. BRENNAN
                                              UNITED STATES MAGISTRATE JUDGE