1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALLEN EDWARDS; NANCY EDWARDS;
     ENVIRONMENTAL LAW FOUNDATION,
11
              Plaintiffs,                    No. CIV S-07-2153 GEB EFB
12
         vs.
13
     CITY OF COLFAX,
14                                           ORDER ON MOTION FOR
              Defendant.                     ATTORNEYS FEES
15   _____/

16        This closed action is before the undersigned pursuant to a November 2008 settlement

17   agreement entered into between the parties and a January 23, 2009 order stating "that the District

18   Court, through Magistrate Brennan, shall retain jurisdiction over Civil Case No. 2:07-CV-02153

19   GEB (EFB) for the sole purpose of enforcing compliance by the Parties with the terms of the

20   Agreement attached as Exhibit A to the Parties' Stipulation to Dismiss with Prejudice"

21   ("Settlement Agreement").  Dckt. No. 42.

22        The action resurfaced before this court in February 2010 when plaintiffs filed a motion

23   for an order finding defendant in civil contempt for violation of the Settlement Agreement.

24   Dckt. No. 43.  Defendant opposed the motion and filed a motion for relief from judgment

25   pursuant to Federal Rule of Civil Procedure 60(b) or for declaratory relief.  Dckt. No. 52.  A

26   hearing was held as to both motions on April 14, 2010, and on April 22, 2010, the court issued

an order (1) denying defendant's motion for relief from judgment; (2) construing plaintiffs'
motion for an order finding defendant in civil contempt as a motion for an order enforcing the
Settlement Agreement, and granting that motion; (3) stating that "[p]laintiffs will be entitled to
recover some of the stipulated penalties plaintiffs seek pursuant to the [S]ettlement [A]greement,
reasonable attorney's fees, and appropriate injunctive relief to compel defendant's compliance
with the [S]ettlement [A]greement"; and (4) scheduling an evidentiary hearing to determine the
appropriate injunctive relief.  Dckt. No. 71.  The order further provided that "[a]fter the
evidentiary hearing, the undersigned will determine what injunctive relief is appropriate, as well
as what monetary penalties to award to plaintiffs and how to allocate those penalties, and what
attorney fees are reasonable to award to plaintiffs."  *Id.*

However, on the day of the scheduled evidentiary hearing, the parties advised the court
that they wished to vacate the evidentiary hearing and conduct further settlement negotiations.
Dckt. No. 104.  Therefore, the evidentiary hearing was vacated and the undersigned held
settlement discussions with the parties.  *Id.*  The settlement discussions continued over the course
of several months and the undersigned met with the parties on four separate occasions.  Dckt.
Nos. 104, 106, 108, 110.  Finally, on October 12, 2010, the parties filed a "Proposed Order Re:
Compliance with Settlement Agreement" resolving most of the issues raised in plaintiffs' motion
for enforcement of the Settlement Agreement and raised during the negotiations related to that
motion.  Dckt. No. 111.  The Order Re: Compliance with Settlement Agreement was approved
by the undersigned on November 2, 2010.  Dckt. No. 113.

Although the Order Re: Compliance with Settlement Agreement addresses nearly all of
the issues raised in plaintiffs' motion, it does not address plaintiffs' request for attorney's fees.
Specifically, the order states that "Plaintiffs' request for fees and costs incurred to date is deemed
submitted and will be addressed in a separate order."  Dckt. No. 113, ¶ 32.

////

////

The undersigned has already determined that plaintiffs are entitled to reasonable costs and attorney's fees pursuant to the Settlement Agreement.[1]  *See* Dckt. No. 71.  Therefore, the issue that remains for decision is the amount of *reasonable* fees to award to plaintiffs.

Plaintiffs seek $459,870.84 in total fees and costs, and have submitted billing entries supporting the fees and costs requested.  The amount requested is based on the following:

- $336,881.00 in attorney's fees billed by Lawyers for Clean Water,[2] based on the following hours and billable rates:
  - Daniel Cooper: 270.35 hours at a rate of $550.00 per hour, for a total of $148,692.50;
  - Samantha Williams: 462.46 hours at a rate of $350.00 per hour, for a total of $161,861.00;
  - Layne Friedrich: 4.67 hours at a rate of $500.00 per hour, for a total of $2,335.00;
  - Drev Hunt: 2.55 hours at a rate of $350.00 per hour, for a total of $892.50;
  - Martin McCarthy: 9.30 hours at a rate of $500.00 per hour, for a total of $4,650.00;
  - Liz Crosson: 12.90 hours at a rate of $290.00 per hour, for a total of $3,741.00;
  - Ashley Eagle-Gibbs: 52.08 hours at a rate of $100.00 per hour, for a total of $5,208.00;
  - Caroline Koch: 67.27 hours at a rate of $100.00 per hour, for a total of $6,727.00;
  - Meghan Strauss: 27.74 hours at a rate of $100.00 per hour, for a total of $2,774.00;

- $22,350.00 in attorney's fees billed by Donald Mooney, based on 59.6 hours at a rate of $375.00 per hour;[3]

- $91,201.69 in expert costs; and

- $9,438.16 in other costs.

---

[1]  The Settlement Agreement provides:  "If the Plaintiffs are the prevailing or substantially prevailing party in the Formal Dispute Resolution proceeding, then [defendant] shall pay Plaintiffs' reasonable costs and attorney's fees incurred in the proceeding consistent with § 505 of the Clean Water Act, 33 U.S.C. § 1365.  If the Parties cannot agree on the payment of Plaintiffs' reasonable costs and fees, then Plaintiffs can file a motion with Judge Brennan for the award of such fees."  Dckt. No. 39, ¶ 67.

[2]  This total was calculated after billing judgment was applied by Lawyers for Clean Water ("LCW").  LCW also incurred an additional $38,571.00 in unbilled fees.

[3]  This total was calculated after billing judgment was applied by Mooney.  Mooney also incurred an additional $3,112.50 in unbilled fees.

I.      Attorney's Fees

    In calculating an appropriate fee award, the court must first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).  This lodestar figure is presumptively reasonable and should only be enhanced or reduced in "rare and exceptional cases."  *Id*.  However, the court may adjust the lodestar figure if various factors overcome the presumption of reasonableness.  *Hensley*, 461 U.S. at 433-34.  Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

    In determining the number of hours reasonably expended, a court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983)).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992), *as amended on denial of reh'g*, (1993) (quoting *Hensley*, 461 U.S. at 433-34).  In determining a reasonable hourly rate, the court considers the relevant community and the prevailing hourly rate in that community for similar services by attorneys of comparable skill and experience.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008).

In opposition to plaintiffs' request for immediate payment of their fees and costs, defendant characterizes plaintiffs' attorney and expert fees and costs as "extraordinary" and argues that the fees are: (1) "precluded by Paragraph 58 of the Settlement Agreement, which limits recoverable fees and costs for compliance monitoring and the meet and confer process during informal dispute resolution to $15,000 over the life of the Agreement"; (2) "duplicative of fees already paid to Plaintiffs' attorneys by the City pursuant to Paragraph 58 of the Settlement Agreement"; (3) "reflective of an excessive number of hours, particularly by Plaintiffs' attorney Samantha Williams, spent on motion related activities";[4] (4) "at rates far in excess of reasonable or prevailing rates for similar work performed in the greater metropolitan Sacramento area where the Eastern District Court resides"; and (5) "reimbursement for excessive and unreasonable costs."  Dckt. No. 78 at 5.[5]

A review of the billing entries submitted by plaintiffs in support of their fee request reveals that the majority of the fees requested were necessarily and reasonably incurred as a result of plaintiffs' efforts to seek compliance with the Settlement Agreement.  However, the court will address each of defendant's contentions regarding plaintiffs' fee request in turn.

A.   Reasonable Number of Hours

1.  Fees Precluded by Paragraph 58 of the Settlement Agreement

Defendant contends that some of the fees that plaintiffs seek are "precluded by Paragraph 58 of the Settlement Agreement, which limits recoverable fees and costs for compliance monitoring and the meet and confer process during informal dispute resolution to $15,000 over the life of the Agreement."  Dckt. No. 78 at 6-7.  According to defendant, "Paragraph 58 provides for specified compensation up to the point in which informal negotiations do not

---

[4]  Defendant also contends that plaintiffs' attorney fees resulting from their unsuccessful *ex parte* application for immediate payment of their attorney fees should be denied since such fees were unnecessarily incurred.  Dckt. No. 101 at 10.

[5]  The page citations are to the page numbers assigned by the Case Management and Electronic Case Filing system listed at the top of the document.

resolve the issue, and a party actually invokes the Formal Dispute Resolution process in

Paragraph 67.  Once the Formal Dispute Resolution process is invoked, which, in this case, was

triggered by the Plaintiffs' February 17, 2010 Motion for Contempt, then and only then do the

fee and cost provisions of Paragraph 67 apply."  *Id.* at 7.  Accordingly, defendant argues that

plaintiffs' fees from March through December 10 of 2009, which defendant contends amount to

$40,741.86 for 107.3 hours, should be capped at $15,000.  *Id.*

Plaintiffs counter that defendant's interpretation of Paragraph 58 is "inconsistent with the

Settlement Agreement's dispute resolution mechanism and with feeshifting pursuant to the Clean

Water Act."  Dckt. No. 79 at 10.  According to plaintiffs, the limited compliance oversight

budget in Paragraph 58 was "based on the assumption that, having settled this action, [defendant]

would substantially comply with the Court-ordered terms."  *Id.* at 10-11.  Plaintiffs contend that

the fund was created "for administrative compliance oversight to take place over the Settlement

Agreement's five-year term."  *Id.*  According to plaintiffs' interpretation of the Settlement

Agreement, if plaintiffs discovered non-compliance, they could invoke the informal dispute

resolution process under Paragraph 66 of the Settlement Agreement and if defendant failed to

come into compliance, they could then seek the Court's intervention via Paragraph 67's formal

dispute resolution process.  *Id.* at 11.  According to plaintiffs, "[a]s a prerequisite to the formal

dispute resolution process, fees and costs incurred in informal dispute resolution are

compensable if formal dispute resolution is required."  *Id.*  Therefore, plaintiffs contend that all

fees that they billed after concluding that Court intervention was necessary to compel

compliance in May 2009, even those spent meeting and conferring with defendant, are covered

by Paragraph 67 as part of formal dispute resolution.  *Id.* at 11-12.

Plaintiffs further contend that "[e]ven applying [defendant]'s narrow interpretation of the

Settlement Agreement, [defendant] overestimates the fees and costs that are attributed to the

informal dispute resolution process."  *Id.* at 12.  According to plaintiffs, although defendant

"arbitrarily assigns December 10, 2009 as the date that Plaintiffs began preparing the contempt

1   motion, . . . Plaintiffs incurred significant fees and costs prior to December 10 in preparing the

2   contempt motion and supporting pleadings." *Id.* "For example, in October and November of

3   2009 Plaintiffs reviewed [defendant]'s self-monitoring reports for violations, and prepared the

4   violations table that eventually was submitted as Exhibit KK to the Cooper Contempt

5   Declaration. . . . Thus even under [defendant]'s interpretation of the Settlement Agreement, at

6   most $29,922.00 in fees and costs are attributable to informal dispute resolution, and all

7   remaining fees are compensable under paragraph 67." *Id.*

8        The court begins with the language of the document.  Paragraph 58 of the Settlement

9   Agreement provides:  "To compensate Plaintiffs for time to be spent by legal staff or technical

10  consultants reviewing compliance reports and any other documents, or participating in the meet

11  and confer process under this Agreement[, defendant] shall pay Plaintiffs' counsel the amount so

12  incurred up to a cap of Fifteen Thousand Dollars ($15,000) for the life of this Agreement . . . ."

13  Dckt. No. 39-1, ¶ 58.  Later in the document, paragraph 67 provides that "[i]f Plaintiffs are the

14  prevailing or substantially prevailing party in the Formal Dispute Resolution proceeding, then

15  [defendant] shall pay Plaintiffs' reasonable costs and attorney's fees incurred in the proceeding

16  consistent with § 505 of the Clean Water Act, 33 U.S.C. §1365." *Id.,* ¶ 67.  Both paragraphs

17  must be given meaning.

18       Paragraphs 58 and 67, when read together, contemplate that the $15,000 cap applies to all

19  attorney and consultant fees incurred reviewing compliance reports and any other documents, or

20  participating in the meet and confer process, up until plaintiffs commenced the formal dispute

21  resolution process.  Indisputably, plaintiffs initiated such a formal process.  The court finds that

22  the triggering point for Paragraph 67 was the determination by plaintiffs in late 2009 that the

23  formal dispute resolution process was imminent and their resulting commencement of research

24  and drafting of pleadings and other supporting documents in connection with that process.

25  Therefore, all attorney's and consultant fees spent through December 10, 2009, as argued by

26  defendant, will be capped at $15,000, except those spent preparing for and/or drafting pleadings

and other supporting documents in connection with the formal dispute resolution process, including the violations table that was submitted in support of the motion for contempt, which the undersigned finds are fees that were incurred "in the Formal Dispute Resolution proceeding" and are therefore covered by Paragraph 67 of the Settlement Agreement.

The court has calculated that a total of $39,265 in attorney's fees were incurred through December 10, 2009: $6,902.50 for Daniel Cooper (12.55 hours); $23,313.50 for Samantha Williams (66.61 hours); $270.00 for Layne Friedrich (0.54 hours); $332.50 for Drevet Hunt (0.95 hours); $270.00 for Ashley Eagle-Gibbs (2.7 hours); $414.00 for Meghan Strauss (4.14 hours); and $7,762.50 for Donald Mooney (20.7 hours).  An additional $2,064.36 in consultant fees were incurred through December 10, 2009 by Carpenter Environmental Associates, Inc.  Therefore, a total of $41,329.36 in attorney's and consultant fees were incurred through December 10, 2009.  All of those fees are capped at $15,000, except for the following, which the undersigned finds were incurred preparing for and/or drafting pleadings and other supporting documents in connection with the formal dispute resolution process and which total $10,628.50:

- 0.5 hours spent by Daniel Cooper on 11/9/09 ($275.00);
- 0.3 hours spent by Daniel Cooper on 11/18/09 ($165.00);
- 1.2 hours spent by Samantha Williams on 10/27/09 ($420.00);
- 1.2 hours spent by Samantha Williams on 10/27/09 ($420.00);
- 2.9 hours spent by Samantha Williams on 10/27/09 ($1015.00);
- 0.2 hours spent by Samantha Williams on 10/27/09 ($70.00);
- 0.75 hours spent by Samantha Williams on 10/29/09 ($262.50);
- 1.2 hours spent by Samantha Williams on 10/29/09 ($420.00);
- 1.55 hours spent by Samantha Williams on 10/30/09 ($542.50);
- 0.5 hours spent by Samantha Williams on 10/30/09 ($175.00);
- 0.76 hours spent by Samantha Williams on 10/30/09 ($266.00);
- 0.1 hours spent by Samantha Williams on 11/2/09 ($35.00);
- 1.15 hours spent by Samantha Williams on 11/2/09 ($402.50);
- 0.1 hours spent by Samantha Williams on 11/2/09 ($35.00);
- 0.5 hours spent by Samantha Williams on 11/3/09 ($175.00);
- 0.65 hours spent by Samantha Williams on 11/3/09 ($227.50);
- 2.1 hours spent by Samantha Williams on 11/3/09 ($735.00);
- 0.1 hours spent by Samantha Williams on 11/3/09 ($35.00);
- 1.2 hours spent by Samantha Williams on 11/4/09 ($420.00);
- 0.15 hours spent by Samantha Williams on 11/11/09 ($52.50);
- 0.3 hours spent by Samantha Williams on 11/11/09 ($105.00);
- 2.5 hours spent by Samantha Williams on 11/11/09 ($875.00);
- 1.5 hours spent by Samantha Williams on 11/11/09 ($525.00);

- 0.2 hours spent by Samantha Williams on 11/12/09 ($70.00);
- 0.75 hours spent by Samantha Williams on 11/12/09 ($262.50);
- 1.7 hours spent by Samantha Williams on 11/13/09 ($595.00);
- 1.7 hours spent by Samantha Williams on 11/13/09 ($595.00);
- 0.75 hours spent by Samantha Williams on 11/13/09 ($262.50);
- 1.2 hours spent by Samantha Williams on 11/16/09 ($420.00);
- 0.1 hours spent by Samantha Williams on 11/18/09 ($35.00);
- 0.1 hours spent by Samantha Williams on 11/18/09 ($35.00);
- 1.2 hours spent by Samantha Williams on 12/8/09 ($420.00);
- 0.1 hours spent by Samantha Williams on 12/10/09 ($35.00);
- .07 hours spent by Layne Friedrich on 10/27/09 ($35.00);
- .07 hours spent by Layne Friedrich on 11/3/09 ($35.00);
- .05 hours spent by Layne Friedrich on 11/10/09 ($25.00);
- 0.3 hours spent by Daniel Mooney on 11/3/09 ($112.50); and
- 0.1 hours spent by Daniel Mooney on 11/11/09 ($37.50).

Accordingly, because $30,700.86 in attorney's fees are covered by the $15,000 cap, the attorney's fee total sought by plaintiffs will be reduced by the difference, $15,700.86. Additionally, because $2064.36 in consultant fees are covered by the $15,000 cap, and that cap has now been met, the consultant fee total (which is discussed below in Section II regarding costs) will be reduced by $2064.36.

### 2. Duplicative of Fees Already Paid

Defendant also contends that plaintiffs' attorney fees and costs are "extraordinary" in that they are "duplicative of fees already paid to Plaintiffs' attorneys by the City pursuant to Paragraph 58 of the Settlement Agreement."[6] Dckt. No. 78 at 8. Specifically, defendant argues that $9,029.49 has already been paid to plaintiffs pursuant to Paragraph 58 of the Settlement Agreement (and pursuant to the $15,000 cap), and that because the $15,000 cap was "for the life of the Agreement," defendant should not be ordered to pay any further fees pursuant to Paragraph 58. *Id.* at 9. Defendant then reiterates its argument (which is discussed in Section I.A.1 above) that the court should not award any fees or costs pursuant to Paragraph 67 of the

---

[6] Defendant contends that the present motion seeks specific fees that were already paid. The total of those fees is $5237.50 (based on 1.6 hours for Daniel Cooper and 2.6 hours for Samantha Williams incurred in March 2009; 0.7 hours for Cooper and 0.4 hours for Williams incurred in April 2009; and 1.4 hours for Cooper and 6.15 hours for Williams incurred in May 2009). Dckt. No. 78 at 8; Dckt. No. 78-3, Thorme Decl., Exs. A, B.

1  Settlement Agreement until December 10, 2009.  *Id.*

2      Plaintiffs acknowledge that their fee request seeks duplicative payment of fees and costs

3  already paid by defendant between March and May of 2009, but contend that "[t]hese funds will

4  be used to replenish the currently depleted compliance monitoring fund."  Dckt. No. 79 at 13.

5  Plaintiffs request that the fee award "specify that [those] fees and costs will be reimbursed to the

6  compliance monitoring fund for future monitoring of the Settlement Agreement."  *Id.*

7      Because the fee deduction addressed in Section I.A.1 above only reduced fees down *to*

8  the $15,000 cap set forth in Paragraph 58 of the Settlement Agreement (and did not address fees

9  already paid as *part of* that $15,000 amount), and because plaintiffs acknowledge that defendant

10  has already paid plaintiffs $9,029.49 in fees and costs pursuant to Paragraph 58, plaintiffs' fee

11  request[7] will be reduced by an additional $9,029.49.[8]

12          3.  Excessive Number of Hours for Work Performed

13      Additionally, defendant contends that the fees sought are "reflective of an excessive

14  number of hours, particularly by Plaintiffs' attorney Samantha Williams, spent on motion related

15  activities."  Dckt. No. 78 at 13.  Defendant also notes that plaintiffs have billed more than double

16  the number of hours that defendant billed since December 2009 and argues that the disparity

17  between the hours billed by the two sides of this case must be considered when determining a

18  reasonable number of hours for this matter.  *Id.*

19      However, the court finds that, regardless of the number of hours billed by defendant's

20  counsel, the number of hours expended by plaintiffs' attorneys in this action, and specifically in

21

22      [7]  For ease of calculation herein, the undersigned applies this deduction to plaintiffs' fee request and not their cost request.

23      [8]  Although plaintiffs contend that defendant should still be ordered to pay the $9,029.49
24  in fees and costs but that the fees should be used to reimburse the compliance monitoring fund,
    the undersigned rejects that argument in light of the fact that the parties re-negotiated the terms
25  of the compliance monitoring fund during the recent settlement negotiations.  For the same
    reason, the undersigned also rejects defendant's argument that it should not be required to pay
26  any more than the $9029.49 it has already paid pursuant to Paragraph 58 because the $15,000
    cap was "for the life of the Agreement."

1  motion related activities, was reasonable and necessary.  Plaintiffs prevailed on their motion, and

2  the court finds that the work conducted by plaintiffs' attorneys was necessary in achieving that

3  outcome and, ultimately, the resolution reached by the parties.

4          Moreover, defendant has not met its burden of establishing what fees plaintiffs expended

5  that are unreasonable.[9]  In opposing a fee demand, defendants have the "burden of providing

6  specific evidence" that the hours were unreasonable.  *McGrath v. County of Nevada*, 67 F.3d

7  248, 255 (9th Cir. 1995) (quoting *Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995)).

8  "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees."

9  *Lucas v. White*, 63 F. Supp.2d 1046, 1057-1058 (N.D. Cal. 1999).  Accordingly, other than the

10  fee reductions discussed above, the undersigned finds that plaintiffs are entitled to recover fees

11  for the remainder of the hours stated in their fee request.

12          B.  Reasonable Hourly Rates

13          Defendant argues that the hourly rates plaintiffs seek are "far in excess of reasonable or

14  prevailing rates for similar work performed in the greater metropolitan Sacramento area where

15  the Eastern District Court resides."  Dckt. No. 78 at 5.  Defendant contends that the hourly rates

16  are unreasonable and excessive, and should therefore be reduced.  *Id.* at 9-12.

17  ////

---

18  [9]  Although defendant contends that plaintiffs' attorney fees resulting from their

19  unsuccessful *ex parte* application for immediate payment of their attorney fees should be denied
since such fees were unnecessary, Dckt. No. 101 at 10, as noted in this court's order denying the

20  *ex parte* request, plaintiffs filed the request in light of their limited financial resources and their
concern regarding defendant's ability to pay any fee award.  *See* Dckt. No. 92 at 2.  Although the

21  request was denied, the court noted that it was "sympathetic to plaintiffs' predicament, especially
in light of defendant's many failures to comply with the settlement agreement entered into in this

22  action."  *Id.*  Had defendant complied with the original settlement agreement, the fees for
compelling compliance would not have been necessary.  Additionally, nearly all of plaintiffs'

23  *and* defendant's arguments regarding the recoverability of attorney's fees and costs in this action
were made in the briefs submitted in connection with the *ex parte* application.  *See* Dckt. Nos. 78

24  and 79; *see also* Dckt. Nos. 74-76; Nos. 81-84.  Therefore, those documents were highly relevant
to the issue of attorney's fees and costs *generally*, and not just plaintiffs' request for early

25  payment of those fees.  Because defendant has not shown that the fees related to that *ex parte*
request, which were incurred as part of the formal dispute resolution proceeding, were

26  unreasonable, defendant's request to exclude those fees is denied.

1   Both parties agree that for the purposes of an attorney's fees motion, "the district court

2   should be guided by the rate prevailing in the community for similar work performed by

3   attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796

4   F.2d. 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stevenson*, 465 U.S. 886, 895 & n.11 (1984)).

5   In this case, although plaintiffs seek rates comparable to those charged in San Francisco,

6   rather than Sacramento, which is the local forum.  Although the court acknowledges that rates in

7   Sacramento are typically below those charged in the San Francisco area, plaintiffs have

8   adequately demonstrated that Sacramento counsel was unavailable to plaintiffs.  *See Gates v.*

9   *Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (San Francisco rates awarded in Eastern

10  District of California where plaintiff demonstrated that the suit required experienced and

11  sophisticated counsel, and skilled counsel was unavailable in the Sacramento area); *Barjon v.*

12  *Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (local forum rate was only appropriate where evidence

13  suggested availability of local counsel).  Specifically, plaintiffs have shown that prior to bringing

14  this citizen enforcement action, they sought experienced local counsel specializing in Clean

15  Water Act citizen enforcement.  Dckt. No. 79 at 7; Dckt. No. 84, Decl. of Allen Edwards, ¶¶ 5-9.

16  In doing so, plaintiffs contacted the Placer County District Attorney's Office, the Sierra Business

17  Counsel, and several local environmental organizations, including two chapters of the Sierra

18  Club, California Sportfishing Protection Alliance, and Friends of the River.  *Id.* ¶¶ 5-7.  They

19  also sought representation from four attorneys in the Placer County/Nevada County area, and six

20  attorneys in the Sacramento area.  *Id.* ¶¶ 8-9.  However, all of the local counsel that plaintiffs

21  contacted lacked the experience and expertise to represent plaintiffs in this action, had conflicts

22  of interest that precluded representation, and/or were unwilling to take the case.  *Id.* ¶¶ 8-10.

23  Because plaintiffs could not locate skilled local counsel – despite their considerable efforts –

24  they retained counsel in San Francisco with demonstrated experience successfully enforcing the

25  Clean Water Act on behalf of citizens.  *Id.* ¶¶ 11-13.

26  ////

1          As such, the undersigned finds that San Francisco billing rates are appropriately applied

2    to the attorney hours incurred in this matter.  *See Barjon*, 132 F.3d at 501-02 (stating that to

3    establish unavailability of local counsel, a plaintiff must demonstrate "unwillingness or inability

4    [to handle the case] due to lack of experience, expertise, or specialization").  Here, defendant has

5    not shown that the rates charged by plaintiffs' counsel are unreasonable rates for attorneys in the

6    San Francisco area, or that the rates are inconsistent with the prevailing rates in that community.

7    Additionally, the undersigned notes that the extraordinary expertise and skill of plaintiffs'

8    attorneys ultimately played a large role in the resolution of this action.  Accordingly, the

9    undersigned finds that plaintiffs' attorneys' hourly rates are reasonable and declines to adjust

10   those rates.  Specifically, the undersigned finds that Daniel Cooper's rate of $550.00 per hour,

11   Martin McCarthy and Layne Friedrich's rates of $500.00 per hour, Samantha Williams and Drev

12   Hunt's rates of $350.00 per hour, and Liz Crosson's rate of $290.00 per hour are reasonable.[10]

13   Also, Daniel Mooney's rate of $375.00 per hour, which defendant concedes is a

14   reasonable rate for counsel in the Sacramento area, is reasonable.

15          Accordingly, the undersigned finds that plaintiffs are entitled to $334,500.65 in

16   attorney's fees.

17   II.    Costs

18          Defendant argues that the costs plaintiffs seek are excessive and unreasonable, and asks

19   that certain "extraordinary costs" in an amount of at least $3,450.78 be removed before any

20   fee/cost award is issued.  Dckt. No. 78 at 5.  Specifically, defendant contends that the following

21   costs are excessive: (1) plaintiffs' claim for lunch at Il Fornaio on April 14, 2010 costing

22   $126.57; (2) plaintiffs' consultants' claim for $1,761.12 in unexplained travel expenses;[11] (3)

23

24          [10]  Additionally, the undersigned finds that Ashley Eagle-Gibbs, Caroline Koch, and
     Meghan Strauss's rates of $100.00 per hour are reasonable.

25          [11]  In their response to defendant's challenge to this cost, which was filed before the July
26   1 evidentiary hearing, plaintiffs stated that "the $1,761.12 in travel costs incurred by Plaintiffs'
     engineering consultant was for a plane ticket to attend the July 1 evidentiary hearing on

1   $143.14 in unexplained "computer costs"; (4) undocumented claims for "Research Economist"

2   consultant costs after the April 14, 2010 hearing date; (5) unsubstantiated mileage, gasoline,

3   phone and copying charges; and (5) other meal costs, one including a nearly 40% tip.  *Id.* at 13-

4   15 (citing the following "extraordinary" costs: Carpenter Environmental - $1761.12 for travel

5   and $139.34 for computer; $350 for Michael Kavanaugh for April 19 & 20, 2010 phone calls;

6   phone costs of $40.20; gas ($52.60) and mileage costs ($147.50 for 295 miles) on March 28,

7   2010, a day in which no hearing or other specific activity in the case occurred; grocery bill of

8   $2.99; duplication and document production costs of $174.40; $3.80 for computer fees; $133.30

9   for mileage; $471.20 for duplication and document production; and $47.76 for phone).

10   Additionally, in a supplemental brief, defendant challenges various consultant costs

11   billed by plaintiffs.  Dckt. No. 101 at 10.  Specifically, defendant objects to (1) a $22,444 bill

12   from Carpenter Environmental Associates "for seven people to work on one 12-page declaration

13   signed by Bruce Bell"; (2) various bills from Carpenter Environmental Associates for computer

14   costs in June 2010; (3) a $1,862.50 bill for consulting performed by Byron Shaw; and (4) a

15   $1,575 bill for consulting performed by Michael Kavanaugh.  *Id.* at 10-11.

16   Plaintiffs counter that all of the costs they seek are legitimate and were necessary for the

17   work performed in this matter.  Dckt. No. 79 at 13-14 (and various supporting declarations).

18   Plaintiffs acknowledge, however, that the March 28, 2010 gas cost of $52.60 should be deducted

19   from their cost total since mileage costs of $147.50 for the same day are also included in their

20   request.  *Id.* at 14.

21   The undersigned has carefully reviewed all of the costs sought by plaintiffs, including the

22   costs defendant contends are "extraordinary" and the explanations for those costs provided by

23   ————————————————

24   injunctive relief – which is refundable should the hearing be canceled or continued."  Dckt. No.
     79 at 14.  Although the July 1 evidentiary hearing was ultimately vacated because of settlement
25   negotiations between the parties, it was not vacated until the day of the hearing.  Therefore, the
     undersigned presumes that the plane ticket was not refunded.  If the ticket was refunded,
26   plaintiffs shall so indicate within the time prescribed for objecting to this order so that the cost
     total can be modified accordingly.

1   plaintiffs, and finds that all of the costs sought by plaintiffs except for the March 28, 2010 gas

2   cost of $52.60, as discussed above, were reasonably incurred in compelling defendant's

3   compliance with the Settlement Agreement.  Therefore, $52.60 will be deducted from plaintiffs'

4   non-expert cost total.  Additionally, as noted above, because $2064.36 of plaintiffs' requested

5   consultant fees were incurred pursuant to Paragraph 58, and since the $15,000 cap set forth in

6   that paragraph has already been met, plaintiffs' consultant fee request will be reduced by

7   $2064.36.  Accordingly, plaintiffs are entitled to recover $98,495.88 in costs (based on

8   $89,137.32 in expert costs and $9385.56 in other costs).

9   III.    Installment Payment Period

10          Finally, defendant requests that the court authorize an installment payment period for the

11  payment of any fees and costs based on its "dire financial situation."  Dckt. No. 78 at 15-17.

12  Specifically, defendant asks that the court "allow for payment over time; specifically, ten (10)

13  equal annual installments."  *Id.*  Defendant provided the court with a copy of a resolution that

14  was adopted by the Colfax City Council on May 12, 2010, declaring that an unreasonable

15  hardship would result unless defendant is permitted to pay any judgment entered by this court,

16  including one requiring the payment of plaintiffs' fees and costs, in installments of up to 10

17  years.  Dckt. No 78 at 17; Dckt. No. 88, Cabral Decl., Ex. J.

18          Plaintiffs oppose defendant's request for a payment schedule, arguing that the payment

19  schedule is neither justified nor authorized.  Dckt. No. 79 at 15-16.  Specifically, plaintiffs

20  contend that defendant "provides no evidence of the claimed hardship, nor any other basis for the

21  requested ten-year schedule" and therefore fails to satisfy the standard under California

22  Government Code section 970.6.  *Id.*

23          This court has discretion to order payment over time and to deny the prevailing party any

24  further compensation for delay in the payment of fees.  *Barjon v. Dalton*, 132 F.3d at 503 (no

25  further compensation despite 17-month delay in payment).  Additionally, under Federal Rule of

26  Civil Procedure 69, the procedure to execute a judgment must "accord with the procedure of the

state where the court is located." Fed. R. Civ. P. 69(a)(1).  California Government Code section

970.6 provides for a payment schedule for judgments not exceeding ten equal annual

installments if both:

> (1) The governing body of the local public entity has adopted an ordinance or resolution finding that an unreasonable hardship will result unless the judgment is paid in installments [and]
>
> (2) The court, after hearing, has found that payment of the judgment in installments as ordered by the court is necessary to avoid an unreasonable hardship.

Cal. Gov't Code § 970.6(a).  California Government Code section 970.6(b) further provides that

"[e]ach installment payment shall be of equal amount, consisting of a portion of the principal of

the judgment and the unpaid interest on the judgment to the date of the payment.  The local

public entity, in its discretion, may prepay any one or more installments or any part of an

installment."  *Id*. at 970.6(b).

Here, as required by California Government Code section 970.6(a)(1), the Colfax City

Council adopted a resolution on May 12, 2010, declaring that an unreasonable hardship would

result unless defendant is permitted to pay any judgment entered by this court, including one

requiring the payment of plaintiffs' fees and costs, in installments.  Dckt. No. 88, Cabral Decl.,

Ex. J.  Although the undersigned has not held a hearing regarding the payment of any attorney's

fees and costs in installments, as required by California Government Code section 970.6(a)(2),

the issue was discussed with all parties on numerous occasions during the recent settlement

discussions in this case.  Dckt. Nos. 104, 106, 108, 110.  In light of those discussions, as well as

the multiple briefs in this action addressing the issue, the undersigned finds that the payment of

over $400,000 in attorney's fees and costs to plaintiffs, as provided herein, in installments is

necessary to avoid an unreasonable hardship to defendant and to help ensure the success of the

re-negotiated settlement agreement between the parties.  Moreover, plaintiffs have not

demonstrated why this court should not exercise its discretion to order payment of plaintiffs'

significant amount of attorney's fees over time, especially in light of the significant financial

obligations defendant has under the November 2, 2010 Order Re: Compliance with Settlement Agreement, as well as the importance of those obligations.  Therefore, the undersigned will direct defendant to pay to plaintiffs the awarded attorney's fees and costs in four equal annual installments in accordance with California Government Code section 970.6(b).

IV.    Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that:

1.  Any objections to the figures calculated in this order shall be filed within seven days of the date this order is filed.  Responses to any such objections may be filed within seven days of the date such objections are filed.  If no objections are filed, this order will become final upon the expiration of the seven day objection period.

2.  Defendant shall pay to plaintiffs $334,500.65 in attorney's, fees, $89,137.32 in expert costs, and $9,385.56 in other costs, along with interest, in four equal annual installments, consisting of a portion of the principal of the judgment and the unpaid interest on the judgment to the date of the payment.  Defendant, in its discretion, may prepay any one or more installments or any part of an installment.

3.  The first installment shall be paid to plaintiffs within thirty days from the date this order becomes final.

DATED:  February 15, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17